IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

MARY G. MOSLEY,                    )
                                   )
          Plaintiff,               )
                                   )
v.                                 )     Case No. CV 98-TMP-2594-E
                                   )
ACE PRODUCTS,                      )
                                   )
          Defendant.               )

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment. The defendant, Gleason Corporation, which is named as Ace Products ("Ace") in the complaint, filed a motion for summary judgment on July 9, 1999. Plaintiff Mary Mosley responded to the motion on January 3, 2000, by filing a memorandum and evidentiary materials. The defendant replied on January 13, 2000. The parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## I.  Undisputed Facts

When viewed in the light most favorable to the nonmovant, the facts relevant to defendant's motion are as follows:

On September 10, 1991, Mosley was employed by Ace Products. It is not clear what Mosley's duties were, but Ace apparently

produced rubber tubing.  At some point during her employment at Ace, some of the rubber tubing became adulterated with other matter, and Mosley was suspected of sabotage in the incident.  She repeatedly denied having introduced the foreign matter into the rubber tubing.  She also told Ace supervisors that a co-worker had committed the act of sabotage and that she possessed a tape recording in which the co-worker admitted the conduct.  Ace did not listen to the tape or investigate the incident further.  Mosley was terminated by Ace for "an act of sabotage" on November 22, 1993.

During her employment at Ace, Mosely had some disagreements or personality conflicts with two other employees, Richard East and Joe East.  Joe East apparently functioned as a supervisor and was responsible for scheduling the hours Mosley would work.  She believed that her conditions of employment were affected by whether she was "nice" to Joe East, both at work and on her own time.

In 1997, Mosley was employed on a temporary basis by Westinghouse, with assurances that the position would lead to permanent employment.  Westinghouse eventually offered Mosley a permanent job.  She was required to complete the application process, which included an application and other documents.  When Mosley applied for the permanent position at Westinghouse, she signed two documents that purport to release her former employer

-2-

from liability in connection with information supplied to a prospective employer.  The first document, which appears to be part of the application form complete at Westinghouse, states in pertinent part:

> I CONSENT TO THE WESTINGHOUSE ELECTRIC CORPORATION OR SUBSIDIARY COMPANY SEEKING AND OBTAINING JOB-RELATED INFORMATION CONCERNING MY PREVIOUS EMPLOYMENT, AND I GIVE CONSENT TO MY PREVIOUS EMPLOYERS AND RELEASE THEM FROM ALL LIABILITY IN CONNECTION WITH THEIR PROVIDING TO WESTINGHOUSE ELECTRIC CORPORATION OR SUBSIDIARY COMPANY JOB-RELATED INFORMATION CONCERNING MY EMPLOYMENT.

The second document is a separate paper titled "Background Investigation Authorization."  It states in pertinent part:

> I authorize Westinghouse Electric Corporation or any of their agents to undertake a verification of the information I have provided and I authorize all corporations, companies, credit agencies, educational institutions, person, law enforcement agencies, criminal, civil and federal courts, and former employers to release information they may have about me and release them from any liability and responsibility from doing so.

Mosley signed the documents, but does not recall reading them.  She agrees that she authorized Westinghouse to collect, and Ace to provide, information about her.

Westinghouse employed an investigations company to conduct the inquiry into Mosley's background.  Through its employee, Sharon

Roland, Ace indicated to the investigator that Mosley was terminated because she committed an act of sabotage. After receiving the information concerning Mosley's previous employment, Westinghouse terminated Mosley from the temporary position and withdrew its offer of permanent employment.

On September 10, 1998, Mosley filed this action against Ace, alleging that Ace defamed her by stating that she had been terminated for committing an act of sabotage. Her complaint asserts two claims: slander and slander per se.

## II.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of

-4-

a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  <u>Celotex</u>, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  <u>Id</u>. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Id</u>. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  <u>Celotex</u>, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

-6-

574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III.  Defendant's Motion for Summary Judgment

Defendant's motion for summary judgment seeks dismissal of both of plaintiff's claims on grounds that: (1) the plaintiff released the defendant from liability by signing two documents at Westinghouse, and (2) the alleged statement was conditionally

-7-

privileged and therefore not actionable in the absent of malice. The defendant further asserts that the statement that Mosley committed sabotage could not constitute slander per se because it does not suggest the requisite criminal activity or moral turpitude.

### A.  The Releases

Although releases in Alabama are generally enforceable, even when prospective and even in the absence of consideration, the releases signed by Mosley do not necessarily shield Ace from liability.  According to Alabama Code § 12-21-109, written releases are given effect "according to their terms and the intentions of the parties."  Where the release is unambiguous, the court may determine its construction and legal effect as a matter of law. Boggan v. Waste Away Group, Inc., 585 So. 2d 1357, 1360 (Ala. 1991).  In Alabama, a party may release another, even from future damages yet unknown.  Jehle-Slauson Const. Co. v. Hood-Rich Architects & Consulting Engineers, 435 So. 2d 716 (Ala. 1983).  A release cannot, however, prospectively release claims for wanton or willful conduct.  Barnes v. Birmingham Int'l Raceway, 551 So. 2d 929 (Ala. 1989).

The defendant argues that, under Alabama law, the releases signed by Mosley entitle Ace to summary judgment on her defamation claims.  However, the releases simply authorized Ace, as a former employer, to release job-related "information."  While the court agrees that the fact that Mosley was terminated for suspicion of sabotage constitutes information, and therefore may have been conduct from which Ace has been released from liability, Mosley asserts that Ace intentionally published the statement that Mosley "committed an act of sabotage" even though Ace knew, or had reason to know, that Mosley was not guilty of the sabotage.[1]  This scenario, as Mosley has testified and the court concludes, was not within the intention of the parties when the release was signed, and a release has effect only according to the intention of the parties.  Ala. Code § 12-21-109.

Defendant's argument in support of its motion for summary judgment also fails to recognize that, under Alabama law, a release from liability for wanton or willful conduct is invalid and against

---

[1]     The defendant offers evidence that Sharon Roland, the person at Ace who told Westinghouse that Mosley had committed an act of sabotage, bore no animosity towards the plaintiff and had no malicious intent.  Even if true, however, this does not compel a conclusion that Ace could not have acted with malice, because it is at least possible that another agent of Ace acted maliciously by bringing the charge and by recording it in the file upon which Roland relied.

public policy.  Barnes v. Birmingham Int'l Raceway, 551 So. 2d 929 (Ala. 1989).  This issue was addressed specifically in Barnes, where the plaintiff signed a release before entering a stock car race and then was injured by allegedly willful or wanton conduct. In Barnes, the Alabama Supreme Court overruled its prior precedent and joined the overwhelming majority of states which prohibit the enforcement of a release for prospective intentional torts.  Id. at 932.

The Alabama Supreme Court examined the effect of a release in the context of a job-related reference in Reece v. Finch, 562 So. 2d 195 (1990) reh'g denied (1990).  In Reece, a physician signed a release similar to that signed by Mosley.  The doctor signed an "Authorization to Release Information" in order to apply for medical malpractice insurance.  In determining whether to insure Reece, the insurer sought references from other doctors concerning Reece's performance as a doctor.  The authorization form released from liability those who provided information about Reece, "notwithstanding the fact that there may be errors, omissions, or mistakes contained in such released information."  Id. at 198.

Ultimately, the summary judgment of the plaintiff's defamation claim in Reece was affirmed on the ground that there had been no evidence to support the requisite "publication" element of the

claim.[2]  However, the trial court's dismissal of the plaintiff's other intentional tort claims was reversed.  The court, relying on <u>Barnes</u>, held that "if public policy prohibits releases as to future wanton conduct in the context of an automobile race, releases as to future intentional tortious conduct in the instant context would likewise be prohibited."  <u>Id</u>. at 200.

It is clear from <u>Reece</u> and <u>Barnes</u> that the plaintiff's prospective release of an **intentional** defamation claim is not valid under Alabama law.  Consequently, the court finds that the defendant's motion for summary judgment is due to be denied as to plaintiff's intentional slander claim, but is due to be granted to the extent that the plaintiff bases her claim on mere negligent conduct.

### B.  Conditional Privilege

Under Alabama law, it is well settled that communications made to prospective employers by an agent of the plaintiff's former employer, such as the statement to Westinghouse at issue in the

---

[2]  Defendant in the instant action has **not** made the argument that there was no "publication" of the defamatory information.  Not having been raised by defendant, plaintiff has not had a fair opportunity to address the question and, thus, the court will not consider that potential basis for summary judgment here.

instant case, are protected by a qualified privilege.  See Hayes v. Wal-Mart Stores, Inc., 953 F.Supp. 1334, 1342-43 (M.D. Ala. 1996). When the communication at issue in a defamation case is subject to that privilege, no action will lie absent a showing of malice.  Id. at 1343.  The Alabama Supreme Court has noted that disposition of the issue of actual malice by summary judgment is generally inappropriate, unless the plaintiff has offered no evidence at all that would support a claim of malice.  Willis v. Demopolis Nursing Home, Inc., 336 So. 2d 1117, 1120 (1976).

The defendant has argued that the plaintiff has failed to offer sufficient evidence of malice to withstand the motion for summary judgment.  The court notes, however, that the plaintiff has testified that Ace, through its agents, refused even to investigate the tape recording that Mosley alleges would prove that another Ace employee committed the sabotage.  Mosley has further testified that there were employees at Ace who were antagonistic toward Mosley. This evidence, if believed, would provide a basis from which a reasonable juror could infer that Ace knew the plaintiff was not guilty of the sabotage and acted with malice in providing the information to Westinghouse.  Consequently, for this additional reason, the defendant's motion for summary judgment on plaintiff's slander claim is due to be denied.

### C. Slander Per Se

Plaintiff seeks to state a claim for slander per se.  In order to prevail on such a claim, the plaintiff must demonstrate that the statement made by Westinghouse "impute[s] an indictable offense involving infamy or moral turpitude."  Brown v. WRMA Broadcasting Co., 238 So. 2d 540 (Ala. 1970).  Webster's Dictionary defines sabotage as the "destruction of an employer's property ... or the hindering of manufacturing by discontented workers."  There is no evidence before this court that such sabotage constitutes a crime, and it can hardly be argued that the act involves the moral turpitude or vileness necessary to turn a statement that may be defamatory into a slander per se.

In this case, plaintiff has not offered any evidence to support her claim for slander per se.  Consequently, the defendant's motion for summary judgment as to the slander per se claim is due to be granted.


### IV.  Conclusion

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that

-13-

defendant's motion for summary judgment is due to be GRANTED IN PART as to any claim of **negligent** defamation and slander *per se* asserted by plaintiff, but DENIED as to her claims of wanton or willful slander with malice.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 21st day of March, 2000.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE